# Federal Defenders
## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 124
White Plains, NY 10601
Tel: (914) 428-7124 Fax: (914) 948-5109

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

April 14, 2026

The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

   Re: *United States v. Johnny Reyes-Relles*
     25 Cr. 340 (PMH)

Dear Judge Halpern,

  "Your Honor, I love this country very much, but I was careless, and I did not do what you or any good citizen would do to deserve to be here . . . . a thousand apologies, Johnny Reyes-Relles." Letter of Johnny Reyes-Relles attached as Exhibit A.

  I respectfully ask the Court to sentence Mr. Reyes-Relles to 18 months of incarceration. While Mr. Reyes-Relles' conduct was unlawful, Mr. Reyes-Relles' remorse, commitment to his children, difficult childhood, the unique circumstances leading up to the instant offense, and his plans to remain in the Dominican Republic are mitigating and justify leniency. For the reasons set forth more fully below, a sentence of 18 months is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, avoid unwarranted sentencing disparities, and provide adequate deterrence and punishment. *See* 18 U.S.C. § 3553(a).

## The § 3553(a) Factors

  In fashioning an appropriate sentence, the Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision "directs sentencing courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)." *Id.* "Those factors are, broadly speaking, proportionality, deterrence, incapacitation, and rehabilitation." *Id.* Among other factors, the Court must also consider "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the kinds of sentences available," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3), (6).

1

### A. Mr. Reyes-Relles' History and Characteristics

Mr. Reyes-Relles was born on January 3, 1967, in La Joya in San Francisco de Macoris, Dominican Republic. PSR ¶ 44. He and his three siblings were raised by his parents, Pedro Reyes and Ana Relles. *Id.* The family lived and worked on a plantation growing cacao and coffee. His parents worked long grueling hours but earned little. As sharecroppers on a plantation, his parents gave 60 percent of what they harvested to the owner. PSR ¶ 46. At times, Mr. Reyes-Relles had no shoes and had to walk barefoot. *Id.* He sometimes had no change of clothes. Despite their poverty, Mr. Reyes-Relles still remembers his early childhood fondly when his parents lived and worked together. He felt safe with them and enjoyed attending school and learning. *See* PSR ¶ 48.

His idyllic childhood changed after Mr. Reyes-Relles turned ten. His father (Pedro) started drinking and coming home drunk from the fields. When Pedro drank, he became emotionally and physically abusive – hurling objects, punching his children, slapping his wife, and leaving scars and bruises on his wife and children. PSR ¶ 45. At age 13, during one of his father's drunken assaults against his mother, Mr. Reyes-Relles intervened to protect his mother and confronted his father. Pedro became furious with his son, left home, and abandoned the family. *See* PSR ¶ 45. Pedro did not return until years later after he was diagnosed with thrombosis and was too weak to care for himself. PSR ¶ 47.

After his father abandoned the family, Mr. Reyes-Relles dropped out of school to work on the plantation and help his mother. He was only thirteen. PSR ¶ 46. He later came to the U.S. to earn money to support himself and his parents. Between 1992 and 2011, Mr. Reyes-Relles was convicted of multiple drug-related offenses and removed from this country. PSR ¶¶ 6-10.

Mr. Reyes-Relles confesses that prior to 2009, he came to the U.S. primarily driven by the desire to earn money. He needed to support his aging parents and to pay for their medical bills. While the desire to help his parents was not wrong, he admits that he was also dependent on drugs that clouded his decision-making. *See* PSR ¶ 65 (admitted that "he did not listen to [the family's] advice . . . [and] that did not think much of the consequences"). His substance abuse caused his relationship with Ms. Torres, the mother of his children, to be "on and off" for many years. PSR ¶ 68. Because of his substance use, he was also not always a great father to his three children, Rebecca (age 35), Andy (age 29), and ▮▮▮▮ (age 17).

On May 8, 2009, Mr. Reyes-Relles pled guilty to one count of illegal reentry and on October 20, 2009, Mr. Reyes-Relles was sentenced to 18 months' imprisonment to run concurrent to his state sentence. PSR ¶ 36. He did not incur any disciplinary infractions during his incarceration. *Id.* He remained sober

2

throughout his incarceration. On January 5, 2011, Mr. Reyes-Relles was removed to the D.R. *Id.* Mr. Reyes-Relles was 44 years old.

When Mr. Reyes-Relles returned to the D.R. in 2011, he was committed to be clear minded. He did not return to using cocaine and remained drug-free. *See also,* PSR ¶ 68 (Ms. Torres stated that Reyes-Relles "cleaned up" his drug use). He built a home for himself and his parents, but his parents passed away within a few years of Mr. Reyes-Relles' return. Free from the burden of supporting his parents and paying for their medical bills, Mr. Reyes-Relles no longer had to worry about money and could work less at the plantation. His children did not require financial support as the older ones worked and Ms. Torres, who works as a math teacher, could adequately support herself and their youngest daughter.



*Mr. Reyes-Relles with his daughter, Rebecca, during her visit to the D.R.*

Mr. Reyes-Relles maintained a close relationship with Ms. Torres and his children from afar. As his son writes, "for many years we were separated by thousands of miles and years into my adulthood he still found ways to have a relationship with us from thousands of miles away." Andy Paulino Letter attached as Exhibit B. The family found a new normal through phone and video calls. Ms. Torres and the children also visited him in the D.R. PSR ¶ 53. He did not plan to come back to this country. But then Covid-19 pandemic hit.

## B. The Nature and Circumstances of the Offense Conduct

In the fall of 2020, Mr. Reyes-Relles became sick with Covid-19 and was hospitalized in the D.R. for a week. He was discharged to make room for other patients but was still unwell. He returned home and remained bedridden for another week. The pandemic upended his community as five of his friends died from coronavirus during the first year of the pandemic.

While he was hospitalized, he could not contact his family. His family was aware that he was sick and at the hospital but had no other information for days. His youngest daughter, an adolescent, was worried sick for her father. As Ms. Torres describes, "She was scared that he had died." Lissette Torres Letter attached as Exhibit C.

Even after Mr. Reyes-Relles regained his strength and resumed regular contact with his family, his daughter remained afraid and distant. The uncertainty of the pandemic was particularly difficult for her. She feared going outside, ███████ ████████, and refused to attend classes. On her bad days, she kept her bedroom dark and refused to come out of her bedroom. *See also*, Exhibit C.

Mr. Reyes-Relles then made a difficult decision to come back to the U.S. for his daughter. It was physically and emotionally taxing for him to return. He endured a perilous journey through Mexico aboard 'La Bestia' (The Beast), the notorious network of cargo trains that transports goods to the U.S. and serves as a dangerous passage for migrants.[1]

Once here, he committed himself to caring for his daughter. As Ms. Torres writes:



*Mr. Reyes-Relles with Ms. Torres and their youngest daughter*

> After the pandemic, Johnny returned to support me with her toughest time of adolescence. Johnny's aide consisted of talking, advising, and nurturing her. He walked her to school and picked her up. This made our daughter feel safe again . . . . At times, Jonny cried with her to console her things will change for the better . . . . She felt safe and secured. Overall, Johnny helped her feel that there are many reasons to continue with life.
>
> Exhibit C.

### C. The Need to Reflect the Seriousness of the Offense Conduct and to Provide Just Punishment

An 18-month sentence is sufficient for Mr. Reyes-Relles, who is 59 years old, has lost over 10 lbs. since being incarcerated, and whose previous incarceration was almost 15 years ago. The circumstances that led to this offense are also mitigating and are unlikely to repeat itself.

---

[1] *See* Rodrigo Dominguez Villegas, *Central American Migrants and "La Bestia": The Route, Dangers, and Government Responses* (Sept. 10, 2014), https://www.migrationpolicy.org/article/central-american-migrants-la-bestia; Valeria Louiselli, *Riding 'the beast': child migrants reveal full horror of their journeys to America* (Oct. 5, 2017), https://www.theguardian.com/inequality/2017/oct/05/riding-the-beast-child-migrants-reveal-full-horror-of-their-journeys-to-us; *Narco Jungle: The Death Train* https://www.migrationpolicy.org/article/central-american-migrants-la-bestia.

Through his guilty plea, Mr. Reyes-Relles has demonstrated remorse. He writes, "I accept that I have not done the right thing to deserve to be in this great nation to which I am grateful in large measure . . . . I must ask for forgiveness . . . . I did not do what you or any good citizen would do to deserve to be here. I am aware that I deserve to be punished." Exhibit A.

### D.  The Need to Provide Deterrence and to Protect the Public

The sentence also provides deterrence and protects the public. Mr. Reyes-Relles has been specifically deterred. Because of his conduct, Mr. Reyes-Relles has been incarcerated for the last 10 months, and he will remain incarcerated when his daughter graduates from high school and attends college. He will not return to the U.S. because he has seen how living here and breaking the law "hurts [his] children." Exhibit A. He wants nothing more than for his children to live their life to the fullest. He does not want to burden them.

Even at Westchester County Jail, Mr. Reyes-Relles works multiple jobs and as a trustee so that his family would not need to put any money in his commissary. His first job begins at 4:45 am and his last shift ends at 4:30 pm. Despite his busy work schedule, Mr. Reyes-Relles attends Father's Count Classes. He is constantly striving to be a better father, to be more loving and nurturing to his children.

He and his family have envisioned a future for him in the D.R. and support his decision to remain there. His children "want him to stay in the Dominican Republic" where he will "be safe." Exhibit B. His youngest daughter ▇▇▇ will be graduating from ▇▇▇▇▇▇▇▇▇▇▇▇ High School this June and attending college this fall. She plans to study accounting. Ms. Torres, who has been working for the Department of Education for over 25 years, plans to retire and join Mr. Reyes-Relles in the D.R. within the next few years. *See* Exhibit C.

Finally, research shows that a more severe sentence does not lead to greater specific deterrence for individual defendants.[2] As for general deterrence, studies have proven that more severe sentences do not result in greater general deterrence.[3] Indeed, there is increasing consensus that longer sentences do not have greater deterrent value, and that deterrence stems from the certainty of prosecution rather than the length of a sentence. Three separate National Academy of Sciences panels have concluded, and empirical data has demonstrated, that "increases in

---

[2] *See* The Honorable Peggy Fulton Hora & Theodore Stalcup, *Drug Treatment Courts in the Twenty-First Century: The Evolution of the Revolution in Problem-Solving Courts*, 42 GA. L. REV. 717, 724 (2008).

[3] M. Tonry, Purposes and Functions of Sentencing, 34 CRIME & JUST. 1, 28-29 (2006). ("[I]ncreases in severity of punishment do not yield significant (if any) marginal deterrent effects. Three national Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.").

severity of punishment do not yield significant (if any) marginal deterrent effects."[4] Department of Justice itself, through its National Institute of Justice, has noted that the "certainty of being caught is a vastly more powerful deterrent than the punishment" itself, and "[i]ncreasing the severity of punishment does little to deter crime."[5]

### E.  The Sentencing Range Established by the Guidelines

In its Pimentel Letter, the government arrived at a Guidelines range of 30 to 37 months. The Department of Probation (hereinafter "Probation") calculates the same total offense level of 15 but arrives at a higher criminal history category that leaves Mr. Reyes-Relles with a Guidelines range of 37 to 46 months. PSR ¶ 89. Probation argues that Mr. Reyes-Relles is in criminal history category V. PSR ¶ 39.

The Guidelines range is merely advisory, however. This Court "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). As already discussed, Mr. Reyes-Relles' history and characteristics and the circumstances of the offense conduct present many mitigating reasons for a sentence well below the advisory range. Additionally, the Court should sentence Mr. Reyes-Relles below the advisory range as Mr. Reyes-Relles' criminal history score, comprised mostly of decades-old offenses, overstates his criminal history and dangerousness.

First, according to Probation, Mr. Reyes-Relles receives 3 criminal history points for his felony drug arrest from 23 years ago. PSR ¶ 34. On November 6, 2003, Mr. Reyes-Relles was arrested for possessing a quantity of cocaine and money while in a car. *Id.* Mr. Reyes-Relles could not timely resolve the case, however, because he was deported the next year while the case was still pending. *Id.* Even though the only reason Mr. Reyes-Relies failed to appear in court on his 2003 case was because he had been deported, a bench warrant was issued against him. He was returned on that warrant years later in 2009. Had Mr. Reyes-Relles not been deported, he would have timely resolved his case, making the 2003 offense too old and stale to count under USSG § 4A1.2(e). If the 23-year-old offense were not counted in his criminal history, Mr. Reyes-Relles' advisory Guidelines range would be 30 to 37 months.

Second, Mr. Reyes-Relles' convictions from 2009 for which he received 6 criminal history points similarly overstate his criminal history and dangerousness. On February 4, 2009, Mr. Reyes-Relles was "observed selling small objects for U.S. currency to another apprehended individual." PSR ¶ 35. While serious, the case

---

[4] *Id.* at 28.
[5] National Institute of Justice, "Five Things About Deterrence," June 5, 2016, https://nij.ojp.gov/topics/articles/five-things-aboutdeterrence.

involved only a small quantity of drugs and was committed while Mr. Reyes-Relles was suffering from substance abuse and addiction. Mr. Reyes-Relles took responsibility for the crime and was sentenced to 18 months of incarceration. Later that year, Mr. Reyes-Relles also pled guilty to illegal reentry and was sentenced to serve 18 months concurrent to his state sentence. PSR ¶ 36. These crimes were committed 17 years ago and did not involve weapons or violence against an individual. These convictions overstate the dangerousness posed by the 59-year-old Mr. Reyes-Relles who is before Your Honor. Without these decades old offenses, Mr. Reyes-Relles' Criminal History Category would be I and his Guidelines range would be 18 to 24 months.

**F. The Need to Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants**

Courts in this District frequently impose sentences with a significant downward variance from the calculated Guidelines range in Section 1362 cases. Should the Court accept the defense's recommend sentence, it would not create an unwarranted sentencing disparity. As shown in sentencing data in the chart in Exhibit D, judges in this district regularly sentence defendants with illegal reentry to below Guidelines sentences. *See, e.g., United States v. Gaynor*, 22 Cr. 324 (RA) (S.D.N.Y. October 28, 2022) (sentencing a defendant who had previously been removed from the country on three occasion with a Guidelines range of 27 to 33 months to 12 months and 1 day); *United States v. Nunez*, 24 Cr. 186 (LJL) (S.D.N.Y. October 7, 2025) (sentencing a defendant who had previously been removed twice following felony convictions with a Guidelines range of 30 to 37 months to 16 months).

## Conclusion

Through his unblemished conduct at Westchester County Jail, strong family support, and showing of sincere remorse, Mr. Reyes-Relles has demonstrated that he will return living a law-abiding life in the D.R. An 18-month sentence sufficiently reflects the seriousness of the offense, avoids unwarranted sentencing disparities, and provides adequate deterrence and punishment.

Sincerely,

Sungso Lee
Assistant Federal Defender

cc: AUSA Justin L. Brooke