

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

April 21, 2026

**VIA ECF AND EMAIL**

The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, N.Y. 10601

> Re:     ***United States v. Johnny Reyes-Relles,*** **No. 25 Cr. 340 (PMH)**
>          **SENTENCING MEMORANDUM**

Dear Judge Halpern:

The Government respectfully submits this letter in advance of the sentencing of the defendant, Johnny Reyes-Relles, scheduled for May 5, 2026. Reyes-Relles pleaded guilty to a one-count Indictment charging illegal re-entry to the United States, following conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range is 37 to 46 months of imprisonment. For the reasons discussed below, a sentence within the Guidelines range would be sufficient but not greater than necessary to achieve the legitimate purposes of sentencing.

## I.     Background

This case arises from the defendant's illegal re-entry into the United States after having previously been convicted of an aggravated felony and deported. It is the defendant's second conviction for this exact crime in this District. As described below, in 1992, the defendant was convicted of criminal possession of stolen property in the fourth degree, an aggravated felony within the meaning of the immigration laws. In 1994, an Immigration Judge ordered him removed, and, in 1999, he was later deported. In 2004, he came back, and he was deported again. In 2009 he came back yet again, and was charged with illegal re-entry, served an 18-month sentence, and then was deported again. In 2024, he was found in the United States when he was arrested in Sloatsburg, New York, for drunk driving. PSR ¶¶ 4–12, 30–37.

### A.     Offense Conduct

The defendant is a native and citizen of the Dominican Republic. PSR ¶ 5. He is not, and has never been, a citizen of the United States. *Id.* At some point prior to June 6, 1988, when the

defendant was arrested in Manhattan for drug dealing[1], the defendant illegally entered the United States.  PSR ¶ 30. On August 23, 1991, the defendant was again arrested, in Yonkers, on a charge of criminal possession of stolen property.  *Id.*  On August 10, 1992, the defendant was convicted in Westchester County Court of criminal possession of stolen property in the fourth degree, in violation of N.Y. Penal Law § 165.45, a Class E felony, and was sentenced to 18 months to three years of imprisonment.  PSR ¶¶ 6, 30.  On March 18, 1994, the defendant was paroled into immigration custody and placed in removal proceedings.  On May 27, 1994, the defendant was released from immigration custody on bond.[2]  On June 24, 1994, the defendant was ordered removed by an Immigration Judge.  On October 25, 1999, the defendant was removed to the Dominican Republic.  PSR ¶ 7.

By at least November 2003, the defendant returned to the United States.[3]  On June 14, 2004, the defendant was advised that the immigration authorities intended to reinstate the June 24, 1994 removal order issued by the Immigration Judge against him.  The defendant indicated that he did not want to contest his removal, and, on December 1, 2004, the defendant was again removed to the Dominican Republic.  PSR ¶ 8.

By at least February 4, 2009, when the defendant—using the name "Melvin Rivas"—was arrested in the Bronx for drug dealing, the defendant yet again returned to the United States.[4]  PSR ¶ 35.  On March 25, 2009, the defendant pleaded guilty to criminal possession of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.06, a Class D felony, and, on April 6, 2009, was sentenced to 18 months' imprisonment.  PSR ¶ 35.

---

[1] On April 2, 2004, the defendant was sentenced to one year of imprisonment for this offense.  PSR ¶ 30.

[2] On February 11, 1996, after having been released on bond in his removal proceeding, the defendant was arrested in Manhattan in possession of stolen merchandise from the Macy's flagship store on 34th Street and was charged with criminal possession of stolen property in the fifth degree.  PSR ¶ 33.  He identified himself as "Marlo Garcia" in connection with this case.  *Id.*  He was later convicted, on November 10, 2003, of criminal possession of stolen property in the fifth degree, in violation of N.Y. Penal Law § 165.40, a Class A misdemeanor, and was sentenced that day to time served, which had been one day.  *Id.*

[3] On November 6, 2003, the defendant was arrested in Manhattan in possession of cocaine and was charged with criminal sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.31, a Class D felony.  PSR ¶ 34.  He identified himself as "Kelvin Rivera" in connection with this case.  *Id.*  He was removed from the United States prior to his guilty plea, and a bench warrant was issued for his arrest, which was fulfilled when the defendant was arrested again on February 4, 2009.  On April 6, 2009, after pleading guilty, the defendant was sentenced to 18 months' imprisonment.  *Id.*

[4] The defendant appears to have returned to the United States earlier than 2009, as he advised Probation that from 2007 to 2009, he was employed in the Bronx during the spring months as a food vendor, and in 2007, worked to rebuilt the front façade and complete landscaping on a residence in New Jersey, among other work during that time period.  PSR ¶¶ 79–81.

At this point, the defendant was charged in this District with illegal re-entry. On May 8, 2009, he pleaded guilty to illegal re-entry, following conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On October 20, 2009, the Honorable Barbara S. Jones sentenced the defendant to 18 months' imprisonment. PSR ¶ 9. The defendant's prior removal order issued by the Immigration Judge was reinstated, and, on January 5, 2011, the defendant was removed from the United States. *Id.*

On September 21, 2024, the defendant was found in the United States when—using the name "Jose A. Paulino Disla"[5]—was arrested in Sloatsburg, New York, for drunk driving. On November 20, 2024, the defendant was convicted of driving under the influence of alcohol, in violation of N.Y. Vehicle & Traffic Law § 1192(1), a traffic infraction, and sentenced that same day to a $300 fine. PSR ¶ 37.

Following the defendant's September 21, 2024 arrest, officers with U.S. Immigration and Customs Enforcement ("ICE") reviewed a fingerprint analysis report generated by Homeland Security Investigations, Forensic Laboratory, that indicated that the fingerprints collected by the defendant in connection with his 1991 arrest for criminal possession of stolen property, his 1994 immigration proceedings, his 2004 removal, his 2009 arrest, his 2011 removal, and his September 21, 2024 arrest are identical.

And, ICE has searched all of its relevant indices and confirmed that following his removal, the defendant never obtained the express consent of the Attorney General of the United States or the Secretary of Homeland Security, to reapply for admission to the United States. PSR ¶ 12.

## B.    Procedural Background

On April 16, 2025, the defendant was charged by sealed criminal complaint with the instant offense, Dkt. 2, and a warrant was issued for his arrest. On July 19, 2025, in the Southern District of California, the defendant was encountered by officers with the United States Border Patrol at the Campo (I-8 Westbound) Border Patrol Checkpoint and was arrested pursuant to the arrest warrant in this case. On July 22, 2025, the defendant had his initial appearance pursuant to Rule 5(c)(3) in in federal district court in San Diego.[6] On July 24, 2025, after a detention hearing, the defendant was ordered detained.

On July 30, 2025, a grand jury in this District returned an Indictment charging the defendant with illegal re-entry, following conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), the same charged contained in the criminal complaint.

---

[5] When the defendant was arrested in the Southern District of California on July 19, 2025, he was in possession of a fraudulent Dominican Republic passport that had a similar name: "Jose Martin Paulino Disla".

[6] *See* Case No. 3:25 Mag. 4018 (S.D. Cal.).

Dkt. 4. On August 5, 2026, the defendant waived an identification hearing and his case was ordered transferred to the Southern District of New York.

On August 29, 2025, the defendant arrived in this District and had his initial appearance and arraignment on the Indictment before Judge Reznik. On December 1, 2025, the defendant pleaded guilty to the Indictment before Your Honor. On January 27, 2026, the initial presentence investigation report was disclosed, and, on February 25, 2026, the final presentence investigation report (the "PSR") was disclosed, Dkt. 15. On April 14, 2026, the defendant filed his sentencing submission. Dkt. 16 (the "Defendant's Submission").

### C.       Applicable Guidelines Range

In connection with the defendant's plea, the Government provided defense counsel with a *Pimentel* letter, dated September 15, 2025, which set out the Government's then-current position as to the application of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") to the defendant's offense. In the *Pimentel* letter, the Government computed the defendant's offense level as 15 and assessed seven criminal history points (criminal history category as IV), resulting in a Guidelines range of 30 to 37 months of imprisonment. In the PSR, Probation computed the same offense level as the *Pimentel* letter but assessed 10 criminal history points (criminal history category V). PSR ¶¶ 17–39, and at 26. The discrepancy results from the Government's erroneous treatment in the *Pimentel* letter of the two-18 month sentences the defendant received on April 6, 2009 for two narcotics offenses, *see* PSR ¶¶ 34–35, as a single sentence, and, accordingly, only assessed three criminal history points. Because these offenses were for charges from different arrests (November 6, 2003 and February 4, 2009) and accordingly were separated by an intervening arrest, Probation is correct that they are not treated as a single sentence under U.S.S.G. § 4A1.2(a)(2), and accordingly each receive three criminal history points. Accordingly, Probation properly determined that the defendant has 10 criminal history points (criminal history category V), and that as such his Guidelines range is 37 to 46 months. PSR ¶¶ 17–39, and at 26.

Probation recommends a sentence of 37 months' imprisonment. PSR at 26. The defendant requests a sentence of 18 months' imprisonment. Defendant's Submission at 1, 7.

## II.       Discussion

### A.       Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set out below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant;

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## B.    The Court Should Impose a Guidelines Sentence

The Government respectfully submits that a sentence within the Guidelines range of 37 to 46 months' imprisonment is the appropriate sentence in this case, as it is sufficient but not greater than necessary to achieve the legitimate purposes of sentencing, in light of the § 3553(a) factors. In particular, such a sentence reflects the seriousness of the offense, promotes respect for the law, reflects the defendant's history and characteristics, and provides just punishment, assuring both general and specific deterrence.

*First*, a sentence of 37 to 46 months is warranted to address the nature and circumstances of the offense and to promote respect for the law. The defendant committed an aggravated felony—criminal possession of stolen property—in the United States and was deported. Then, disregarding any effort to apply for admission or follow immigration requirements, the defendant came back—on multiple occasions—in defiance of U.S. law. And, each and every time he came to the United States, he committed crimes. He accumulated multiple narcotics distribution and criminal possession of stolen property convictions. And most recently, he was arrested after driving drunk, driving 90 miles per hour in a 65 mile per hour zone. PSR ¶ 37 chemical breath test yielded a .12% blood alcohol content. *Id.* This is extremely dangerous conduct that put the community in danger. A Guidelines sentence is therefore necessary to promote respect for the law and provide just punishment for the defendant's clear disregard for the laws and immigration requirements of the United States. These reasons alone justify a 37 to 46-month sentence.

The need to promote respect for the law is made all the more significant because the defendant illegally re-entered the United States following his conviction for an aggravated felony. By twice increasing the maximum penalty—now 20 years—for such illegal re-entrants, Congress made clear that illegally re-entering the United States after committing an aggravated felony is a particularly serious crime.[7]  Indeed, Congress has repeatedly increased the penalties for illegal re-entry. *See United States v. Suquilanda*, 116 F.4th 129, 144 n.13 (2d Cir. 2024)[8].  The defendant entirely ignored the law and repeatedly committed crimes after returning to the United States on multiple occasions.  This is the conduct that Congress has sought to proscribe and punish.  The defendant's flagrant disrespect for the law weighs in favor of a Guidelines sentence in order to promote respect for the law.

*Second*, the history and characteristics of the defendant weigh in favor of a sentence within the Guidelines range of 37–46 months.  The instant offense is far from the defendant's first. Instead, this is the defendant's ninth criminal conviction, and he has multiple prior narcotics distribution convictions and theft convictions, as described above.  And this is not even the defendant's first illegal re-entry offense.  As discussed above, the defendant was previously convicted in this District of illegal re-entry and was sentenced to 18 months' imprisonment.  The defendant's recidivism, and the failure of his prior sentences to deter him, reinforces the appropriateness of a longer sentence in this case—one within the Guidelines range—in order to promote respect for the law, deter the defendant, and protect the public.  Indeed, that the defendant was arrested most recently for drunk driving while in the United States illegally further shows his lack of respect for the law and his disregard for community safety, making a Guidelines sentence appropriate.

*Third*, the need for deterrence weighs in favor of a sentence of 37 to 46 months.  As discussed above, the defendant has demonstrated a consistent and repeated willingness to ignore the law.  He has never made an effort to apply to legal admission to the United States and has instead snuck back in repeated and knowing disregard of U.S. law.  He has committed multiple crimes while here, selling drugs, committing theft, and driving drunk.  A sentence of 37 to 46 months is necessary to ensure that the defendant—and others similarly situated—obey U.S. immigration requirements.  And to ensure that defendants who come to the United States to commit crimes and risk community safety will not be treated with leniency.

In requesting a sentence of 18 months of imprisonment, roughly half of the low end of the Guidelines range, the defendant emphasizes his difficult upbringing in the Dominican Republic and his desire to support his family by coming to the United States.  But this explanation does not

---

[7] In 1988, Congress increased the penalty for illegal re-entry following conviction of an aggravated felony to 15 years.  *See* Pub. L. 100-690, § 7345, Nov. 18, 1988, 102 Stat. 4471.  In 1994, Congress increased it again, to 20 years.  *See* Pub. L. 103-322, § 130001, Sept. 13, 1994, 108 Stat. 2023.

[8] "In 1988, Congress imposed enhanced prison terms for 'any' reentry; in 1990, it authorized greater fines; in 1994, it included increases to the maximum prison terms for defendants with prior convictions; and in 1996, it included enhanced penalties, created requirements for a collateral attack of a deportation order, and expanded its coverage."

excuse the defendant's repeated defiance of U.S. law and immigration requirements, and it does not offset the fact that once the defendant got to the United States, he has been a danger, committing multiple crimes. And a sentence that is the same as the last sentence the defendant received for illegal re-entry—18 months—would not be appropriate. The defendant's prior sentence did not deter him from reoffending. It did not incentivize him to move forward and accept that he cannot return to the United States without authorization. It did not incentivize him to stay on a law-abiding path and not drive drunk. Because the defendant was not deterred by his prior sentence, a longer sentence within the Guidelines range is necessary to show him and others similarly situated that repeated criminal conduct and disregard for U.S. law will be met with appropriate punishment.

### Conclusion

For the reasons set out above, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 37 to 46 months of imprisonment.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: _____
Justin L. Brooke
Assistant United States Attorney
(914) 993-1918


CC:   Sungso Lee, Esq. (via ECF and email)
      Michelle Millan, U.S. Probation Officer (via email)